## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUSAN FINGER, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| STONEMOR INC., ANDREW AXELROD, | ) | **FEDERAL SECURITIES LAWS** |
| JOSEPH M. REDLING, DAVID MILLER, | ) | |
| PATRICIA WELLENBACH, SPENCER E. | ) | JURY TRIAL DEMANDED |
| GOLDENBERG, STEPHEN NEGROTTI, and | ) | |
| KEVIN PATRICK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Susan Finger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against StoneMor Inc. ("StoneMor" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Axar Capital Management, LP ("Axar").[1]

---

[1] Axar is the Company's majority stockholder, owning approximately 74.6% of StoneMor's outstanding shares. The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

2. On May 24, 2022, the Company entered into an Agreement and Plan of Merger with affiliates of Axar, Axar Cemetery Parent Corp. ("Parent") and Parent's wholly owned subsidiary Axar Cemetery Merger Corp. ("Merger Sub") (the "Merger Agreement"). The Merger Agreement provides that StoneMor stockholders will receive $3.50 in cash for each share of Company common stock if the Proposed Transaction is consummated.

3. The Company's corporate directors subsequently authorized the September 20, 2022, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for November 1, 2022.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of StoneMor common stock.

10. Defendant StoneMor is a Delaware corporation with its principal executive offices located at 3331 Street Road, Suite 200, Bensalem, Pennsylvania 19020. StoneMor's shares trade on the New York Stock Exchange under the ticker symbol "STON." StoneMor is an owner and operator of cemeteries and funeral homes in the United States. As of September 1, 2022, the Company owned and operated 304 cemeteries and 73 funeral homes in 24 states and Puerto Rico. StoneMor cemetery products and services, which are sold on both a pre-need and at-need basis, include: burial lots, lawn and mausoleum crypts, burial vaults, caskets, memorials, and all services which provide for the installation of this merchandise.

11. Defendant Andrew Axelrod ("Axelrod") is and has been Chairman of the Board

and a director of the Company at all times relevant hereto.  Defendant Axelrod is the founder of Axar and serves as its Managing Partner and Portfolio Manager.

12. Defendant Joseph M. Redling has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

13. Defendant David Miller is and has been a director of the Company at all times relevant hereto.

14. Defendant Patricia Wellenbach is and has been a director of the Company at all times relevant hereto.

15. Defendant Spencer E. Goldenberg is and has been a director of the Company at all times relevant hereto.

16. Defendant Stephen Negrotti is and has been a director of the Company at all times relevant hereto.

17. Defendant Kevin Patrick is and has been a director of the Company at all times relevant hereto.

18. Defendant Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."  The Board formed a special committee (the "Conflicts Committee") in connection with the Proposed Transaction that was advised by Kroll, LLC, operating through its Duff & Phelps Opinions Practice ("Duff & Phelps").

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On May 25, 2022, StoneMor announced in relevant part:

BENSALEM, PA - May 25, 2022 - StoneMor Inc. (NYSE: STON) ("StoneMor" or the "Company"), a leading owner and operator of cemeteries and funeral homes, today announced that it has entered into a definitive merger agreement

under which a subsidiary of Axar Capital Management, LP ("Axar") will be merged with and into StoneMor and all outstanding shares of StoneMor common stock not owned by Axar as to which dissenters' rights are not perfected will be converted into the right to receive $3.50 in cash per share. Axar currently owns approximately 75% of the outstanding shares of StoneMor common stock. The cash consideration represents a 54.2% premium to the Company's closing share price on May 24, 2022, the last trading day prior to today's announcement of the execution of a definitive merger agreement.

The agreement was entered into following receipt of a proposal by Axar on September 22, 2021 in which Axar expressed an interest in pursuing discussions concerning strategic alternatives that might be beneficial to the Company and its various stakeholders. The transaction was negotiated on behalf of StoneMor by the Conflicts Committee of its Board of Directors, which is comprised entirely of independent directors, with the assistance of independent financial and legal advisors. Following the Conflicts Committee's unanimous recommendation, StoneMor's Board of Directors approved the merger agreement and has recommended that StoneMor's stockholders adopt and approve the merger agreement and the merger.

"Our agreement with Axar delivers a significant premium for StoneMor's stockholders and ensures a strong foundation for us to continue our expansion," said Joe Redling, President and Chief Executive Officer. "Our Board firmly believes that this transaction is in the best interests of all of our stockholders other than Axar and its affiliates and delivers an ongoing commitment to excellence for our customers, employees and communities we serve."

The agreement provides for a "go-shop" period during which the Conflicts Committee (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 60 days subsequent to signing of the Merger Agreement, ending July 23, 2022. There can be no assurance that this "go-shop" process will result in a superior proposal, particularly in light of Axar's ownership position and the fact that Axar has no obligation to support any such superior proposal. StoneMor does not intend to disclose developments with respect to the solicitation process unless and until its Conflicts Committee and the Board of Directors has made a decision with respect to any potential superior proposal. The Company will pay Axar a termination fee in certain circumstances, including a fee equal to 2% of the aggregate value of the non-Axar shares if the Company terminates the agreement during the "go-shop" period to enter into a superior proposal that Axar supports, and a fee equal to 4% of the aggregate value of the non-Axar shares if the Company terminates the agreement after the "go-shop" period to enter into a superior proposal that Axar supports. No termination fee is payable if the Company terminates the

agreement upon a change of recommendation in connection with a superior proposal that is not supported by Axar.

The merger is subject to approval by holders of a majority of the outstanding common stock of StoneMor and in addition, requires the approval by the holders of a majority of the outstanding common stock of StoneMor not owned by Axar or any of StoneMor's directors or executive officers or members of their immediate families. Axar has agreed to vote the shares of StoneMor common stock it owns in favor of the merger agreement. The merger agreement is also subject to customary closing conditions. Axar has fully committed financing and the transaction is not subject to a financing condition.

Subject to satisfaction of the conditions to closing, the transaction is currently expected to close in the fall of 2022. If the transaction is completed, StoneMor will become a privately held company and its stock will no longer trade on the New York Stock Exchange.

Duff & Phelps, now rebranded as Kroll, is serving as financial advisor and Faegre Drinker Biddle & Reath LLP is serving as legal counsel to the Conflicts Committee. Houlihan Lokey is serving as financial advisor and Schulte Roth & Zabel LLP is serving as legal counsel to Axar. Duane Morris LLP is serving as legal counsel to the Company.

**The Materially Incomplete and Misleading Proxy Statement**

20. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on September 20, 2022. The Proxy Statement, which recommends that StoneMor stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial analysis underlying the fairness opinion provided by Duff & Phelps; and (b) potential conflicts of interest faced by Duff & Phelps

*Material Misrepresentations and/or Omissions Concerning Duff & Phelps' Financial Analysis*

21. The Proxy Statement also fails to disclose material information concerning Duff & Phelps' financial analysis.

22. With respect to the *Discounted Cash Flow Analysis ("DCFA")* performed by Duff & Phelps, the Proxy Statement fails to disclose whether Duff & Phelps utilized forecasted unlevered free cash flows or free cash flows of the Company for the years 2022-2036.[3] The Proxy Statement must further disclose a complete set of the cash flows Duff & Phelps utilized in its *DCFA*, including but not limited to the free cash flows for years 2027-2036, if they were utilized.

23. The Proxy Statement also fails to disclose the Company's terminal values utilized by Duff & Phelps in connection with its DCFA, in addition to StoneMor's normalized fiscal year ending 2036 free cash flow used to calculate those terminal values.

24. With respect to *the Selected Public Companies Analysis* performed by Duff & Phelps, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by the financial advisor.

25. With respect to the *Selected Mergers and Acquisitions Transactions Analysis* performed by Duff & Phelps, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by the financial advisor.

*Material Misrepresentations and/or Omissions Concerning Company Duff & Phelps' Potential Conflicts of Interest*

26. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisor, including the details of any services Duff & Phelps or its affiliates have provided to Axar and its affiliates or defendant Axelrod and his affiliates in the two years prior to the delivery of its fairness opinion, and any compensation Duff & Phelps or its affiliates have received for such services provided.

---

[3] *See* Proxy Statement at 39-40.

27. The omission of the above-referenced information renders statements in the "Opinion of the Conflicts Committee's Financial Advisor" section of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

28. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and StoneMor**

29. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. StoneMor is liable as the issuer of these statements.

31. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

32. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

34. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

35. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

36. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of StoneMor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of StoneMor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

41. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons

acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 14, 2022      **LONG LAW, LLC**

             By: */s/ Brian D. Long*
                Brian D. Long (#4347)
                3828 Kennett Pike, Suite 208
                Wilmington, DE 19807
                Telephone: (302) 729-9100
                Email: BDLong@LongLawDE.com

                *Attorneys for Plaintiff*